UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
WILLENA NANTON,                      :
                                     :
                 Plaintiff,          :        05 CIV. 8989 (DLC)
                                     :
         -v-                         :            OPINION
                                     :           AND ORDER
CITY OF NEW YORK; STANLEY K. SCHLEIN, :
COMMISSIONER, NEW YORK CITY CIVIL    :
SERVICE COMMISSION (in his official  :
capacity); and NEW YORK CITY CIVIL   :
SERVICE COMMISSION, DEPARTMENT OF     :
ADMINISTRATIVE SERVICES; MARTHA HIRST, :
COMMISSIONER, DEPARTMENT OF          :
ADMINISTRATIVE SERVICES (in her      :
official capacity); NEW YORK CITY LAW :
DEPARTMENT; MICHAEL CARDOZO,         :
CORPORATION COUNSEL, NEW YORK CITY LAW :
DEPARTMENT (in his official capacity); :
OFFICE OF THE MAYOR; MAYOR MICHAEL   :
BLOOMBERG (in his official capacity), :
                                     :
                 Defendants.         :
------------------------------------ X

Appearances:

Plaintiff Pro Se:

Willena Nanton
1482 Needham Avenue
Bronx, NY 10469

For Defendants:

Daniel Chiu
Corporation Counsel of the City of New York
100 Church Street, Room 2-170
New York, New York 10007

DENISE COTE, District Judge:

     Plaintiff Willena Nanton ("Nanton"), a lawyer and an

African-American woman, brings this employment discrimination

action against her former employer, the New York City Civil Service Commission ("CSC"), the City of New York ("City"), one of her supervisors at the CSC, and various other City defendants.  Nanton, who is proceeding pro se, claims that her supervisors subjected her to a hostile work environment and terminated her employment based on her race and gender.  She complains further of retaliation for a discrimination complaint made to the New York City Law Department ("Law Department").  Nanton brings these claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII").  For the following reasons, the defendants' motion for summary judgment is granted in part.

BACKGROUND

The following facts, drawn from the record the parties have presented on summary judgment, are undisputed or taken in the light most favorable to the plaintiff, unless otherwise indicated.  Nanton was employed by the CSC, a quasi-judicial body that reviews personnel decisions made by City agencies. She was one of four staff members at the CSC, which also has five part-time Commissioners.  From 1997 to 2002, Nanton served as the Deputy General Counsel and Executive Secretary of the CSC.

In November 2001, Nanton assumed the duties of the General Counsel and Director. In June 2002, the Commissioners officially promoted her to the position of General Counsel and Director. Commissioners Stanley Schlein ("Schlein"), Bernard Jackson ("Jackson"), Stephanie Kupferman ("Kupferman"), and David Lande ("Lande") voted in favor of this promotion. As General Counsel and Director, Nanton's duties initially included attending hearings, reviewing legal reports, drafting legal decisions for the Commissioners, supervising administrative staff and legal interns, authorizing supply purchases, overseeing issues relating to personnel, payroll, and budget, communicating with other City agencies, and serving as the CSC's "conflict of interest liaison" and Freedom of Information Law liaison.

From fall 2002 to summer 2003, a law student named Brisette Gantt ("Gantt") interned at the CSC. During the academic year, Gantt had a good relationship with Nanton, but after the arrival of three additional law student interns in the summer of 2003 ("summer interns"), their relationship deteriorated. Sometime during the summer, Gantt and Nanton had a physical altercation, which ended when other staff members intervened. All of the summer interns resigned shortly after this incident. Kupferman voiced her support for Nanton by saying, "I don't believe you

could have done this because you're a church-going bible-toting woman."

Around March 2003, when handing back a draft decision that Nanton had asked her to review, Kupferman said, "I don't mind checking your Ebonics."  Over a year later, Kupferman accused Nanton of being lazy.  On April 12, 2004, Kupferman approached Nanton and asked to speak with her because there was "a problem between us."  Nanton told Kupferman that Kupferman was the one with the problem.

In January 2003, Schlein became Chair of the CSC.  Sometime in the summer of 2003, Schlein asked Nanton in front of other staff to complete an administrative task that was not within her job duties, and she refused.  He told her that if that happened again he would fire her.  Sometime between January 2003 and December 2004, Schlein told Nanton that the Commissioners were not used to working with an African-American woman, that she should keep her tone low, that she should speak like an attorney, and that she was lazy and unambitious.

On June 29, 2004, Schlein told Nanton she was not giving a one hundred percent effort to support the changes he was making at the Commission and that she needed to examine her work habits.  On unspecified dates, Schlein questioned Nanton's ability to perform the job duties of General Counsel and Director and asked her every hour or two about decisions on

which she was working.[1]   On an unspecified date, Schlein told

staff member Ruddy Henriquez that a draft decision Nanton had

written was "almost gibberish."   Nanton admits that she

sometimes made spelling or proofreading errors but attributes

these mistakes to time pressure imposed by Schlein.

Lande, too, questioned Nanton's professional abilities.   He

would contradict her description of cases, scream at and berate

her in front of other staff members, offer explanations where

she had not requested them, and follow her to her office to get

draft decisions from her.

On August 23, 2004, Nanton contacted the City Department of

Citywide Administrative Services ("DCAS") to inquire about the

procedure for filing a discrimination complaint.   She met with

---

[1] Nanton further alleged at her deposition that Schlein told
staff they did not have to listen or speak to her and didn't
have to be supervised by her.   Schlein also instructed staff to
jam the copy machine so Nanton could not use it.   These facts
are not considered in deciding this motion because Nanton has
not established that she has personal knowledge that would
enable her to testify to them at trial.   See Fed. R. Evid. 602;
Fed. R. Civ. P. 56(e); Patterson v. County of Oneida, 375 F.3d
206, 219 (2d Cir. 2004) ("The Rule's requirement that affidavits
be made on personal knowledge is not satisfied by assertions
made 'on information and belief.' . . . Rule 56(e)'s requirement
that the affiant have personal knowledge and be competent to
testify to the matters asserted in the affidavit also means that
an affidavit's hearsay assertion that would not be admissible at
trial if testified to by the affiant is insufficient to create a
genuine issue for trial.   Nor is a genuine issue created merely
by the presentation of assertions that are conclusory.").

Assistant Corporation Counsel Carolyn Wolpert ("Wolpert") to file a complaint on September 16, 2004.

Sometime between September and December 2004, Kupferman embarrassed Nanton by spontaneously offering to spell the word "liaison" for her during a hearing.  Around November 2004, Schlein told Nanton that he had heard complaints about her from Henriquez and Mora and that she should treat them with respect. Schlein reassigned at least one of the cases Nanton had been handling to attorney Norma Lopez, whom the Commissioners had hired in the fall of 2004.  Sometime between September and December 2004, Schlein told Nanton that she would have to obtain permission to take any time off from Evelyn Horowitz, the CSC's office manager.

By letter dated December 7, 2004, Wolpert informed Nanton that the Law Department had found no probable cause to support Nanton's allegations of discrimination.  Six days later, on December 13, the CSC fired Nanton.  In a meeting attended by several other Commissioners, Schlein told Nanton that her job performance had been unacceptable for the past six months, that she had been confrontational with staff and the Commissioners, and that he had met with her several times to discuss her writing.  He also accused Nanton of copying confidential documents.  Nanton told Schlein that she did not have any CSC documents.  She now concedes that she copied and retained two

confidential letters written by Commissioners concerning the
2002 hiring process for the position of General Counsel and
Director, although she claims she had the right to do so.  Lande
told Nanton at the time of her firing that her job was
equivalent to that of a law secretary even though she was a
"directing general counsel" and that he had received no benefit
from her work at the CSC.

Schlein testified at his deposition that the Commissioners
collectively decided to fire Nanton.  He testified that they had
reached this decision months before the actual termination of
her employment and shortly before Nanton contacted City agencies
to complain of race and sex discrimination.

Nanton's final paycheck arrived three months late.  Nanton
waited ten months before receiving a managerial lump sum
payment.  In response to one of several inquiries, Lopez told
Nanton that the delay occurred because Nanton's annual leave had
to be calculated manually.  The City normally uses computer
software for this calculation.  The CSC did not notify Nanton's
health insurers of her firing until March or April 2005.  She
elected to continue her benefits under the COBRA program in
March or April, and was billed for COBRA payments between the

date her employment terminated and the date she elected COBRA
coverage.[2]

On April 27, 2005, Nanton filed an EEOC charge.  Nanton
filed the present lawsuit on October 24, 2005.


DISCUSSION

Summary judgment may not be granted unless all of the
submissions taken together "show that there is no genuine issue
as to any material fact and that the moving party is entitled to
a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The
moving party bears the burden of demonstrating the absence of a
material factual question, and in making this determination, the
court must view all facts in the light most favorable to the
non-moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986); Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d
Cir. 2006).  When the moving party has asserted facts showing
that the non-movant's claims cannot be sustained, the opposing
party must "set forth specific facts showing that there is a
genuine issue for trial," and cannot rest on the "mere
allegations or denials" of the movant's pleadings.  Fed. R. Civ.
P. 56(e); accord Sista, 445 F.3d at 169.  Only disputes over

---

[2] Nanton argues in her memorandum that Schlein "fabricated a poor
work history" for her, hindering her efforts to obtain
employment.  Nanton has not identified when this occurred or
provided evidence that it occurred.

material facts, facts that might affect the outcome of the suit under the governing law, will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

I.  Proper Defendants

All of the defendants with the exception of the City have moved for summary judgment on the ground that the only proper defendant in this Title VII lawsuit is the City.  Individual defendants are not subject to Title VII liability.  Patterson v. Cty. of Oneida, 375 F.3d 206, 221 (2d Cir. 2004).  Therefore, summary judgment is granted to defendants Schlein, Hirst, Cardozo, and Bloomberg.

The individual City offices that Nanton has named as defendants are similarly not amenable to suit.  Nanton may sue only her employer.  Gulino v. New York State Dep't of Educ., 460 F.3d 361, 370 (2d Cir. 2006).  The summary judgment record contains no evidence that the DCAS, Office of the Mayor, or Law Department employed Nanton during the time period relevant to this action.  While the parties dispute whether the City is the only proper defendant when CSC is the employer, there is no dispute that CSC would not qualify as an employer under Title VII since it has fewer than fifteen employees.  See 42 U.S.C. §

2000e(b).  Therefore, summary judgment is also granted to the
CSC, the DCAS, the Law Department, and the Office of the Mayor.


II.  Timeliness

The City has moved to dismiss any claim based on acts of
discrimination occurring before July 1, 2004, on the ground that
only those actions in the final five months of the plaintiff's
employment survive the Title VII time bar.  Neither Nanton nor
the City has identified any disparate treatment claim that would
be barred by a July 1, 2004 cut-off date.  The hostile work
environment claim would survive even if the court considered
whether such a claim existed for the period after July 1, 2004.
Because none of the plaintiff's claims are barred by the statute
of limitations it is unnecessary to address the parties'
arguments about equitable tolling or the continuing violations
exception to the timely filing requirement.


III.  Termination

The plaintiff has brought a Title VII claim for
discriminatory termination of her employment.  Claims of
disparate treatment under Title VII are analyzed using the
burden-shifting approach set forth in McDonnell-Douglas Corp. v.
Green, 411 U.S. 792, 802-05 (1973).  The plaintiff bears the
initial burden of establishing a prima facie case of

discrimination.  Williams v. R.H. Donnelley, Corp., 368 F.3d

123, 126 (2d Cir. 2004).  A plaintiff's burden in presenting

prima facie evidence of discriminatory treatment is "minimal,"

McPherson v. New York City Dep't of Educ., 457 F.3d 211, 215 (2d

Cir. 2006), but the plaintiff must nonetheless establish that

> (1) [s]he is a member of a protected class; (2) [s]he is
> competent to perform the job or is performing [her] duties
> satisfactorily; (3) [s]he suffered an adverse employment
> decision or action; and (4) the decision or action occurred
> under circumstances giving rise to an inference of
> discrimination based on [her] membership in the protected
> class.

Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005).

If the plaintiff succeeds in making this prima facie

showing, the burden shifts to the defendant to articulate a

legitimate, non-discriminatory reason that motivated the adverse

employment action.  McPherson, 457 F.3d at 215-16.  The

defendant's burden is "one of production, not persuasion."

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142

(2000).  If the defendant meets this burden, it "will be

entitled to summary judgment . . . unless the plaintiff can

point to evidence that reasonably supports a finding of

prohibited discrimination."  Joseph v. Leavitt, 465 F.3d 87, 90

(2d Cir. 2006).  The ultimate question is whether the evidence,

viewed in the light most favorable to the plaintiff, would

support a finding "that the defendant intentionally

discriminated against the plaintiff."  Reeves, 530 U.S. at 143.

Plaintiffs may offer remarks made by supervisors as evidence of discriminatory motive.  As the Court of Appeals recently clarified,

> [T]he more remote and oblique the remarks are in
> relation to the employer's adverse action, the less
> they prove that the action was motivated by
> discrimination.  For example, remarks made by someone
> other than the person who made the decision adversely
> affecting the plaintiff may have little tendency to
> show that the decision-maker was motivated by the
> discriminatory sentiment expressed in the remark.  The
> more a remark evinces a discriminatory state of mind,
> and the closer the remark's relation to the allegedly
> discriminatory behavior, the more probative that
> remark will be.

Tomassi v. Insignia Financial Group, Inc., 478 F.3d 111, 115 (2d Cir. 2007) (citation omitted).  Additionally, "[t]he relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class."  Id. at 116.

The City does not argue that the plaintiff has failed to make out a prima facie case of discriminatory termination.  The City has met its burden of producing evidence that the termination was motivated by legitimate, non-discriminatory reasons.  The reasons Schlein listed at the time of Nanton's termination -- that her job performance had been unacceptable for the past six months, that she had been confrontational with staff and the Commissioners, that he had met with her several

times to discuss her writing, and that she had copied confidential documents for personal use -- reflect legitimate management concerns.

Nanton, in turn, has raised a question of fact as to whether her firing was motivated by race or sex discrimination. Schlein's comment sometime between January 2003 and December 2004 that the Commissioners were not used to working with an African-American woman and Kupferman's reference to Ebonics[3] in or around March 2003 could support an inference that Nanton's race or sex contributed to her confrontations with the Commissioners and led to her firing.

Even though Schlein, Kupferman and Lande had voted in favor of appointing Nanton as General Counsel and, later, of terminating her employment, the City's argument that this fact necessarily defeats a finding of discrimination fails.  Since roughly two-and-a-half years passed between Nanton's promotion to the General Counsel position and the termination of her employment, the "same actor" inference is insufficient to win summary judgment in the context of the evidence submitted with this motion.  See Carlton v. Mystic Transp., Inc., 202 F.3d 129, 138 (2d Cir. 2000) (finding that seven years that passed between

---

[3] Even though Kupferman was not present when Nanton was told she was fired, the evidence shows (and it would be fair to infer, if it did not) that all of the Commissioners had been consulted about the decision to fire the CSC General Counsel.

hiring and firing "significantly weakens the same actor
inference" and citing cases applying inference where less than
two years had passed); see also Feingold v. New York, 366 F.3d
138, 154-55 (2d Cir. 2004) (changes in circumstances may defeat
same actor inference).   Summary judgment is denied on the
discriminatory discharge claim.


IV.   Retaliation

     Nanton also claims that the CSC retaliated against her for
filing a discrimination complaint with the Law Department.
Title VII forbids retaliation against an employee for opposing
any practice made unlawful by the statute.   42 U.S.C. § 2000e-
3(a).   Retaliation claims, like other Title VII claims, are
evaluated under a three-step burden shifting analysis.   Jute,
420 F.3d at 173.   First, the plaintiff must make out a prima
facie case; second, the defendant must articulate a non-
retaliatory reason for the action; third, if the defendant meets
its burden, the "plaintiff must demonstrate that there is
sufficient potential proof for a reasonable jury to find the
proffered legitimate reason merely a pretext for impermissible
retaliation."   Quinn v. Green Tree Credit Corp., 159 F.3d 759,
764 n.5 (2d Cir. 1998) (citation omitted).   In the third step,
"the presumption of retaliation dissipates and the employee must

show that retaliation was a substantial reason for the adverse
employment action." Jute, 420 F.3d at 173.

In order to establish a prima facie case of retaliation, an
employee must show "(1) participation in a protected activity;
(2) that the defendant knew of the protected activity," id.
(citation omitted); (3) an employer action that "might have
dissuaded a reasonable worker from making or supporting a charge
of discrimination," Kessler v. Westchester County Dept. of Soc.
Servs., 461 F.3d 199, 207 (2d Cir. 2006) (citation omitted); and
(4) a "causal connection" between the protected activity and the
employer action.  Jute, 420 F.3d at 173.  With respect to the
second prong of the prima facie case, general corporate
knowledge suffices.  Kessler, 461 F.3d at 210.  Temporal
proximity between the protected activity and the employer action
can support an inference of causation.  Feingold, 366 F.3d at
157 (two-week gap).

In her complaint, Nanton claims that she experienced the
following adverse actions in retaliation for filing a
discrimination complaint:  (1) termination of employment; (2)
appointment of Lopez to the same title as Nanton prior to
Nanton's discharge; and (3) delayed receipt of Nanton's final
paycheck and lump sum payment.  It is likely that the
retaliation claim will principally rest on the act of firing
Nanton.  Nonetheless, since the City has not moved for summary

judgment on the ground that the latter two actions would not
have "dissuaded a reasonable worker from making or supporting a
charge of discrimination," Kessler, 461 F.3d at 207 (citation
omitted), this Opinion may not reach that question.  Similarly,
the City has not moved for summary judgment regarding post-
employment compensation even though it is unlikely that Nanton
will be able to establish that the Commissioners caused any
delays in her receipt of her final paycheck or lump sum payment.

     For the reasons discussed with respect to the
discrimination claim, the City has produced enough evidence to
establish a legitimate, non-retaliatory reason for the
termination of Nanton's employment.  The City has confined its
motion for judgment on the retaliation claim to its contention
that it had decided to terminate Nanton's employment before she
filed her Law Department complaint.  The City proffered limited
evidence, in the form of deposition testimony, to this effect.
Schlein explained that the Commissioners waited to execute this
decision until the Law Department concluded its investigation,
and fired Nanton within days of learning of its completion.

     If the City had produced sufficient admissible evidence
that the Commissioners decided to fire Nanton before they
learned that she was filing a complaint with the Law Department,
then it would be entitled to summary judgment on this prong of
Nanton's retaliation claim.  With such a showing, there would be

16

no causal connection between the protected activity and the firing.  Since this decision was a collective one by the Commissioners, to carry the day one would have expected that the City would have tendered affidavits from several of the Commissioners attesting to this fact, and if it existed, contemporaneous documentation of the decision.  Instead, it has relied exclusively on one Commissioner's testimony in response to the plaintiff's questions at his deposition.  In the context of this pro se lawsuit, that testimony standing alone is insufficient to deny the plaintiff her right to a jury trial.


V.  Hostile Work Environment

     Nanton has alleged that Schlein and Lande subjected her to a hostile work environment because of her race and gender. Unlike claims of discrimination based on disparate treatment or retaliation, a hostile work environment claim is "based on the cumulative effect of individual acts."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002).  Title VII is violated "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Id. at 116 (citation omitted).

Hostile work environment claims must meet both an objective
and a subjective standard.  Not only must the victim herself
"subjectively perceive [the] environment to be abusive," but the
misconduct of which a plaintiff complains also must be "severe
or pervasive enough to create an objectively hostile or abusive
work environment."  Petrosino v. Bell Atlantic, 385 F.3d 210,
221 (2d Cir. 2004) (citation omitted).  As a general matter, the
conduct of which a plaintiff complains "must be sufficiently
continuous and concerted in order to be deemed pervasive."
Feingold, 366 F.3d at 150.  "Isolated acts, unless very serious,
do not meet the threshold of severity or pervasiveness."  Alfano
v. Costello, 294 F.3d 365, 374 (2d Cir. 2002).  To determine
"whether an actionable hostile work environment claim exists,"
the court looks "to all the circumstances, including the
frequency of the discriminatory conduct; its severity; whether
it is physically threatening or humiliating, or a mere offensive
utterance; and whether it unreasonably interferes with an
employee's work performance."  Morgan, 536 U.S. at 116 (citation
omitted).

Although the question is a close one, Nanton's hostile work
environment claim is not appropriately resolved on summary
judgment.  Nanton's testimony establishes genuine issues of fact
as to her subjective perception of the work environment.  As for
the objective element, the record contains some evidence that

during the relevant time period certain Commissioners berated
and spoke condescendingly to Nanton in front of other staff with
such frequency that they created a pervasively hostile
environment when judged objectively.  It cannot be said at this
stage in the case that Nanton will be unable to establish that
she experienced verbal attacks that were sufficiently pervasive
to create an abusive environment.


V.  Intentional Infliction of Emotional Distress

     In her memorandum, Nanton argues that she has provided
evidence of intentional infliction of emotional distress.
Nanton did not plead this claim.  Even if she had pleaded it,
however, the defendants would be entitled to summary judgment.
Nanton has not provided evidence that her supervisors' conduct
was "so outrageous in character, and so extreme in degree, as to
go beyond all possible bounds of decency, and to be regarded as
atrocious, and utterly intolerable in a civilized society."
Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir. 2001)
(citation omitted).


CONCLUSION

     The defendants' motion for summary judgment is granted in
part and denied in part.  Summary judgment is granted to all
defendants except the City.  Summary judgment is also granted on

the claim of intentional infliction of emotional distress.

Summary judgment is denied with respect to Nanton's claims

against the City for discriminatory discharge, retaliation, and

a hostile work environment.

     SO ORDERED:

Dated:    New York, New York
           August 10, 2007

                             DENISE COTE
                     United States District Judge

COPIES SENT TO:


Willena Nanton                     Daniel Chiu
1482 Needham Avenue                Eric Eichenholtz
Bronx, NY 10469                    Assistant Corporation Counsel
                                   City of New York Law Department
                                   100 Church Street
                                   New York, NY 10007


Magistrate Judge Maas